**CITY OF INDIANAPOLIS,**
Appellant–Defendant,

v.

**Cynthia HICKS on behalf of and as next friend of Jada Richards, a minor, Appellee–Plaintiff.**

No. 49A02–1002–CT–95.

Court of Appeals of Indiana.

Aug. 10, 2010.

Rehearing Denied Oct. 15, 2010.

Jonathan L. Mayes, Chief Litigation Counsel, Shannon L. Logsdon, Assistant Corporate Counsel, Indianapolis, IN, Attorney for Appellant.

Randall L. Juergensen, Matthew C. Boulton, Andy Ray, Keller & Keller, Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

The City of Indianapolis appeals the trial court's nunc pro tunc order granting plaintiff Cynthia Hicks's motion to correct error and reinstating Hicks's negligence suit brought against the City on behalf of her minor child. The City raises three issues for our review, which we restate as:

1) whether an initial order granting Hicks's motion to correct error was invalid for being signed only by a magistrate; 2) whether the trial court properly used a later nunc pro tunc order to retroactively sign and grant Hicks's motion to correct error; and 3) whether the grant of Hicks's motion to correct error was, on its merits relative to the Indiana Tort Claims Act ("ITCA"), an abuse of discretion. We conclude the City waived any challenge based on the magistrate's lack of authority by failing to object until after time for ruling on the motion to correct error expired, and waiver notwithstanding, the trial court's chronological case summary ("CCS") entries provided a sufficient basis to later issue its nunc pro tunc order granting Hicks's motion to correct error. Further concluding the grant of the motion to correct error was not an abuse of discretion because the City failed to show noncompliance with the tort claim notice requirements of the ITCA, we affirm.

*Facts and Procedural History* [1]

On March 3, 2005, Hicks's seven-year-old daughter, Jada Richards, was struck by a passing vehicle as she crossed the street on her way to school. On May 17, 2005, Hicks mailed a tort claim notice to Indianapolis Public Schools ("IPS"), and on October 17, 2006, Hicks mailed a tort claim notice to the City.

In February 2008, Hicks filed her negligence complaint against the City and IPS,[2] acting as next friend on behalf of Jada and seeking recovery for Jada's personal injuries. The City filed a motion to dismiss, arguing Hicks failed to timely file a tort

claim notice with the City. On July 16, 2009, Magistrate Burnett Caudill heard argument on the City's motion and took the matter under advisement. On August 13, 2009, the trial court granted the City's motion to dismiss. The order was signed by both Magistrate Caudill, recommending the order for approval, and Marion Superior Court Judge John F. Hanley, approving and so ordering.

On September 10, 2009, Hicks filed a motion to correct error. On October 8, 2009, Magistrate Caudill entered an order granting Hicks's motion to correct error and reversing the previous dismissal in favor of the City. Magistrate Caudill signed on the line titled "Judge, Marion Superior Court 11." Appellant's Appendix at 76. However, nothing in the record indicates Magistrate Caudill was appointed special judge or judge pro tempore in the matter. CCS entries for October 8, 2009, state: "Court approves granting Plaintiff's motion to correct error and denying Defendant's City of Indianapolis, motion to dismiss"; "Jacket entry: Plaintiff's motion to correct error granted. See entry. Reistate [sic] file to open." *Id.* at 9.[3] The jacket entry, handwritten and dated October 8, 2009 on paper headed "Minutes of the Court," was signed "B. Caudill." Appellant's Supp. App. at 9.

On December 22, 2009, the trial court set the case for telephonic pre-trial conference. On January 15, 2010, the City filed a motion to vacate the pre-trial conference, arguing the October 8, 2009 order granting Hicks's motion to correct error had no legal effect for being signed only by a

---

1. We heard oral argument on June 14, 2010, in the Court of Appeals courtroom. We thank counsel for their able presentations.

2. Summary judgment in favor of IPS was entered on June 6, 2009.

3. Despite the CCS entry directing the case file to be reopened, a certified December 17, 2009 copy of the CCS shows the case status as "disposed." Appellant's Supplemental Appendix at 1. A January 22, 2010 CCS entry states "case has been redocketed." Appellant's App. at 10.

magistrate, the motion to correct error was deemed denied on October 26, 2009, and the case came to an end when Hicks failed to file a notice of appeal. On January 22, 2010, the trial court issued the following order:

> *Nunc Pro Tunc Order Granting Plaintiff's Motion to Correct Error and Denying Defendant's ... Motion to Dismiss*
>
> Comes now [Hicks], by counsel, having filed Plaintiff's Motion to Correct Error ... and the Court, having examined said Motion, and having ruled in favor of said Motion on October 8, 2009 ... now finds that [it] should be granted and Defendant's, City of Indianapolis, Motion to Dismiss should be denied, Nunc Pro Tunc to October 8, 2009.
>
> It is therefore Ordered that Plaintiff's Motion to Correct Error is Granted and Defendant's, City of Indianapolis, Motion to Dismiss is Denied as of October 8, 2009.

Appellant's App. at 13. The nunc pro tunc order was signed by both Magistrate Caudill and Judge Hanley. The City now appeals.

### Discussion and Decision

#### I. Standard of Review

■ In general, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind.Ct.App.2005), *trans. denied.* However, to the extent the issues raised by the City are purely questions of law, our review is de novo. *See Ind. BMV v. Charles*, 919 N.E.2d 114, 116 (Ind.Ct.App.2009) ("Although rulings on motions to correct error are usually re-viewable under an abuse of discretion standard, we review a case de novo when the issue ... is purely a question of law."); *Christenson v. Struss*, 855 N.E.2d 1029, 1032 (Ind.Ct.App.2006) (challenge to magistrate's authority to conduct hearing on motion to correct error presented question of law reviewed de novo).

#### II. Magistrate's Authority

■ The City argues, and Hicks does not dispute, that Magistrate Caudill lacked the authority to enter an order granting Hicks's motion to correct error. Except in criminal trials and other circumstances not applicable here, a magistrate "may not enter a final appealable order unless sitting as a judge pro tempore or a special judge." Ind.Code § 33–23–5–8.[4] Hicks does not argue Magistrate Caudill was sitting as a judge pro tempore or special judge, and there is no evidence in the record suggesting he was so appointed. Therefore, Magistrate Caudill's October 8, 2009 order purporting to grant Hicks's motion to correct error was defective for failing to contain Judge Hanley's signature or another indication it was approved or adopted by the trial court. *See* Ind.Code § 33–23–5–9(a) (magistrate "shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court" but "[t]he court shall enter the final order"); *Christenson*, 855 N.E.2d at 1033 (magistrate may conduct hearing on motion to correct error, but "the judge must still perform the necessary judicial act of granting or denying the motion") (quotation omitted); *see also In re Hawkins*, 902 N.E.2d 231, 240–41 (Ind.2009) (emphasizing that "[r]e-

---

4. If a magistrate presides at a criminal trial, the magistrate may enter a final order, conduct a sentencing hearing, and impose a sentence on the convicted person. Ind.Code §§ 33–23–5–5(14), 33–23–5–9(b). A magistrate may also "[e]nter a final order or judg-ment in any proceeding involving matters specified in [Indiana Code section] 33–29–2–4 (jurisdiction of small claims docket) or [Indiana Code chapter] 34–26–5 (protective orders to prevent domestic or family violence)." Ind.Code § 33–23–5–5(15).

view of final orders by the presiding judge is not a mere technicality," and finding that judge's regularly permitting master commissioner to issue purportedly final PCR orders constituted conduct prejudicial to the administration of justice).

■ However, Hicks contends, and we agree, the City waived any challenge to the validity of the October 8, 2009 order by failing to make any objection until January 15, 2010, ninety-nine days after the defective order was issued and well after the forty-five day time for ruling on Hicks's motion to correct error expired pursuant to Trial Rule 53.3(A). Our supreme court has long held that defects in the authority of a court officer, as opposed to the jurisdiction of the trial court itself, to enter a final order will be waived if not raised through a timely objection. *See Floyd v. State*, 650 N.E.2d 28, 33 (Ind.1994) (holding "the failure of a defendant to object at the original trial to the jurisdiction of a court officer to enter a final appealable order operates as waiver of the issue both on appeal ... and on collateral attack...."); *Gordy v. State*, 262 Ind. 275, 282–83, 315 N.E.2d 362, 366–67 (1974) (holding defendant waived challenge raised for first time on appeal that commissioner who conducted trial lacked requisite authority, because "when a judge has been called or an attorney appointed to try a cause, and no objection is made *at the time*, or to his sitting in the cause when he assumes to act, all objections thereto will be deemed waived") (emphasis added; quotation omitted). More recently, this court has applied the same principle to civil proceedings and clarified that any objection to the authority of an adjudicative officer must be raised at the first instance the irregularity occurs, or at least within such time as the tribunal is able to remedy the defect. *See Sullivan v. City of Evansville*, 728 N.E.2d 182, 188–90 (Ind.Ct.App. 2000) (holding that appellant, by failing to object to commissioners' authority before or at the administrative hearing, waived any challenge, and citing *Atkinson v. City of Marion*, 411 N.E.2d 622, 629 (Ind.Ct. App.1980), which held issue of authority was waived when raised by appellant " 'for the first time at a point when the Board could no longer attempt to rectify the situation' ").

■ Here, the City eventually called the trial court's attention to the defect of the October 8, 2009 order being signed only by Magistrate Caudill, but did not do so until well after the deadline for ruling on Hicks's motion to correct error had expired. Thus, not only did the City fail to challenge at the first instance an irregularity apparent on the face of the order,[5] it also failed to raise the issue until a point when the trial court could no longer correct the error by issuing an amended order bearing the trial judge's signature. We conclude the City's failure to timely object waived any challenge based on Magistrate Caudill's lack of authority. However, even if the issue had not been waived, for the reasons explained below, we find no error in the trial court's use of a nunc pro tunc order to complete the record and show that Judge Hanley did in fact timely approve and adopt Magistrate Caudill's recommended grant of Hicks's motion to correct error.

---

5. To the extent the case status was unclear based upon the irregularity, it would have been a simple matter for the City to have clarified its understanding by immediately checking the CCS or contacting the trial court. Although attorneys are entitled to rely upon notification by the clerk regarding trial court orders, they have a "general duty to regularly check the court records and monitor the progress of pending cases." *Slay v. Marion County Sheriff's Dep't*, 603 N.E.2d 877, 883 (Ind.Ct.App.1992), *trans. denied.*

### III. Use of Nunc Pro Tunc Order

■ The trial court issued its January 22, 2010 nunc pro tunc order to remedy the defect in the October 8, 2009 order by placing Judge Hanley's signature and approval on the grant of Hicks's motion to correct error "as of October 8, 2009." Appellant's App. at 13. However, the City argues the trial court was without authority to issue such an order nunc pro tunc and specifically argues there is no written memorial indicating the court adopted Magistrate Caudill's recommendation within the time limit for ruling on Hicks's motion to correct error. We disagree.

■■ Our supreme court has defined a nunc pro tunc order as follows:

A nunc pro tunc entry is . . . an entry made now of something which was actually previously done, to have effect as of the former date. Such an entry may be used to either record an act or event not recorded in the court's order book or to change or supplement an entry already recorded in the order book. Its purpose is to supply an omission in the record of action really had, but omitted through inadvertence or mistake.

The trial court's record, however, must show that the unrecorded act or event actually occurred. Thus, this Court has required that a written memorial must form the basis for establishing the error or omission to be corrected by the nunc pro tunc order.

*Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995) (quotations, emphasis, and citations omitted). The supporting written memorial, to provide a sufficient basis for the nunc pro tunc entry, must: 1) be found in the records of the case; 2) be required by law to be kept; 3) show action taken or orders or rulings made by the court; and 4) exist in the records of the court contemporaneous with or preceding the action described. *Id.* A nunc pro tunc entry may not "be

used as the medium whereby a court can change its ruling actually made, however erroneous or under whatever mistakes of law or fact such ruling may have been made." *Brimhall v. Brewster*, 835 N.E.2d 593, 597 (Ind.Ct.App.2005) (quotation omitted), *trans. denied.*

Thus, to provide a sufficient basis for the trial court's nunc pro tunc entry, there must be a written memorial showing that Judge Hanley actually did approve Magistrate Caudill's recommendation before time for ruling on the motion to correct error expired. Such evidence is provided by the CCS entries for October 8, 2009 stating:

Court approves granting Plaintiff's motion to correct error and denying Defendant's City of Indianapolis, motion to dismiss.

Jacket entry: Plaintiff's motion to correct error granted. See entry.

Appellant's App. at 9. The CCS meets the general requirements for a valid memorial, in that it is found in the records of the case, is required by the trial rules to be kept, shows actions taken by the trial court, and its entries presumably exist contemporaneously with the actions they describe. *See* Ind. Trial Rule 77(B) (CCS is "an official record of the trial court"); *Cotton*, 658 N.E.2d at 900 (sequential ordering of CCS entries "ordinarily reflects the actual point at which the entries . . . were made"). In *Cotton*, our supreme court held contemporaneous CCS entries provided a sufficient written memorial to support a nunc pro tunc entry that a special judge properly qualified and assumed jurisdiction, notwithstanding the unexplained absence of the entries from the record of judgments and orders. 658 N.E.2d at 900–01. Similarly, in *Mid–West Fed. Sav. Bank v. Epperson*, 579 N.E.2d 124 (Ind.Ct.App.1991), this court concluded

the trial court effectively adopted a magistrate's findings, conclusions, and judgment when, even though the final order was signed only by the magistrate, the clerk's order book contained the stamped signature of the trial judge together with an entry stating the court "being duly advised by the Magistrate and/or Commissioner . . . now approves the findings and recommendations of the said Magistrate and/or Commissioner." *Id.* at 126–27.

Here, it is dispositive that the CCS, as the only written matter indicating whether the trial court timely adopted Magistrate Caudill's recommended grant of the motion to correct error, supports an affirmative answer to that question. Further, this case differs importantly from the principal authority relied upon by the City, *Johnson v. Johnson,* 882 N.E.2d 223 (Ind.Ct.App. 2008), where the magistrate orally informed the parties following a hearing that the motion to correct error would be granted, but there was no written order purporting to grant the motion and no CCS entry indicating the trial court approved the magistrate's determination. *Id.* at 225, 227. We held the use of a nunc pro tunc order invalid in that situation because "there [was] no evidence that the trial court adopted the magistrate's oral findings and conclusions or otherwise granted [appellee's] motion to correct error within thirty days of the hearing." *Id.* at 227. Here, by contrast, the CCS entries are clear evidence on their face that the trial court approved Magistrate Caudill's recommendation.

However, the City argues the CCS entries are not sufficient evidence, as "there is no signature by the trial judge, no judge's notes, and no judge's initials on the order or the jacket entry to support an entry on the CCS that the trial court approved the October 8, 2009 order." Appellant's Reply Brief at 6. Initially, we note

that the statute requiring the trial court to enter a final order upon reviewing a magistrate's findings and recommendations does not prescribe any particular method, such as signatures, notes, or initials, by which the trial judge must enter his or her approval. *See* Ind.Code § 33–23–5–9(a). In addition, it is well settled that the trial court speaks through its CCS or docket, *Young v. State,* 765 N.E.2d 673, 678 n. 6 (Ind.Ct.App.2002), and this court is limited in its authority to look behind the CCS to examine whether an event recorded therein actually occurred, *see Trojnar v. Trojnar,* 698 N.E.2d 301, 304 (Ind.1998) (in context of Trial Rule 72, "a proper Clerk's notation on the CCS will presumptively establish the fact that notice was mailed"); *Minnick v. Minnick,* 663 N.E.2d 1226, 1228 (Ind.Ct.App.1996) ("A challenge to the mailing of notice is precluded when the docket clearly states that notice was mailed.").

As nothing in the record specifically contradicts the trial court's October 8, 2009 statements in the CCS that the court approved granting Hicks's motion to correct error, we conclude these entries are a sufficient written memorial that Judge Hanley timely approved Magistrate Caudill's recommendation. The other principal case relied upon by the City, *Gibson v. State,* 910 N.E.2d 263 (Ind.Ct.App.2009), involved the readily distinguishable scenario where the defendant's undisputed testimony and the trial court's own statements and findings directly contradicted the CCS entries stating the defendant was granted continuances. *Id.* at 267–68. Only upon that showing the CCS entries were "factually inaccurate" did we hold they were properly disregarded. *Id.* at 268. Here, in contrast, there is simply a lack of information corroborating the CCS entries, and accordingly we are not at liberty to disregard them as a record of the trial court's actions. *See Cotton,* 658 N.E.2d at 901

(emphasizing that although a nunc pro tunc entry "cannot be used to show that an event happened which did not actually occur," this language "should not be read to prevent a trial court from completing its record of what did in fact occur").[6]

In light of the foregoing, we conclude the trial court did not err by using a nunc pro tunc order to complete the record and retroactively sign and grant Hicks's motion to correct error. We therefore address the City's argument that the grant of the motion to correct error, by reversing the previous dismissal of Hicks's negligence suit brought on behalf of her daughter, was on its merits an abuse of discretion.

## IV. Merits of Motion to Correct Error

■ The City argues the trial court's ruling on the merits was an abuse of discretion because the trial court's original dismissal of the case was correct. In so arguing, the City relies on the tort claim notice requirement of the Indiana Tort Claims Act ("ITCA"):

> Except as provided in section 9 of this chapter, a [tort] claim against a political subdivision is barred unless notice is filed with:
>
> (1) the governing body of that political subdivision; . . . within one hundred eighty (180) days after the loss occurs.

Ind.Code § 34–13–3–8(a). The exception in Indiana Code section 34–13–3–9 provides: "If a person is incapacitated and cannot give notice as required in section . . . 8 of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed." The City argues, and Hicks does not dispute, that because Hicks did not file a tort claim notice with the City until October 17, 2006, well more than one hundred eighty days after the March 3, 2005 incident, Hicks did not satisfy the general tort claim notice rule with respect to the City. However, Hicks argues her daughter's claim is saved by the tolling rule of section 34–13–3–9, due to her daughter's status as a minor.

In *South Bend Community Sch. Corp. v. Widawski*, 622 N.E.2d 160 (Ind.1993), the supreme court interpreted the tort claim notice tolling rule, as formerly codified at Indiana Code section 34–4–16.5–8 but materially identical to the present statute.[7] The supreme court held "the status of minority qualifies a person as incapacitated and postpones the deadline for the required notice of tort claim . . . until within 180 days after minority ends." *Id.* at 162. As a result, the tort claim of a minor child filed by her mother as next friend was not precluded, even though no tort claim notice was filed until two years after the incident. *Id.* at 161. The *South Bend*

---

6. In a related argument, the City contends that because the CCS was not immediately updated following the October 8, 2009 order to reflect the case status as reopened, this fact casts doubt upon whether the trial court actually intended to grant Hicks's motion to correct error. However, nothing in the record indicates the delay in updating the CCS was due to anything other than oversight or a backlog in the court staff's work. We "will not engage in speculation" as to the internal workings of the trial court, including the reasons for an absence of information from the CCS. *Minnick*, 663 N.E.2d at 1228.

7. As formerly codified, the statute provided: "If a person is incapacitated and cannot give notice as required in section 6 or 7 of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed." *South Bend*, 622 N.E.2d at 161 (quoting former Indiana Code section 34–4–16.5–8). The former statute referred specifically to the definition of "incapacitated" set forth at Indiana Code section 29–3–1–7.5, *see South Bend*, 622 N.E.2d at 161, which definition remains unaltered.

court did not discuss whether the statute's conjunctive requirement that a person be "incapacitated *and* cannot give notice" (emphasis added) might mean that in some cases, legal incapacity due to minority is not enough. However, implicit in its statement that minority "postpones the deadline for the required notice of tort claim ... until within 180 days after minority ends," *id.* at 162, is a negative answer to that question. Chief Justice Shepard alone dissented, arguing the statute "means children must file their actions within the statute of limitations by their next friend." *Id.* (Shepard, C.J., dissenting).

Hicks's daughter was seven years old when the traffic incident giving rise to this tort case occurred. Pursuant to *South Bend*, Hicks's daughter's status as a minor makes her incapacitated and postpones the deadline for filing a notice of tort claim until after her minority ends. The City argues *South Bend* was impliedly overruled, and Chief Justice Shepard's dissenting approached adopted, by *Bushong v. Williamson*, 790 N.E.2d 467 (Ind.2003). However, the issue in *Bushong* was "whether in a tort action against a public employee, a trial court may examine evidence outside of the complaint to determine whether the employee was acting within the scope of employment." *Id.* at 469. *Bushong* had no occasion to address the tort claim notice tolling rule; despite the trial court's finding that ITCA was not complied with, the supreme court affirmed the trial court on other, unrelated grounds. *See id.* at 474. It did not cite or remotely suggest disapproval of the *South Bend* holding. Likewise, no subsequent supreme court case or legislative enactment has disapproved or abrogated *South Bend*. Therefore, the City's argument that *South Bend* is no longer controlling precedent is unpersuasive.

The City attempts to distinguish *South Bend* by noting Hicks did file a tort claim notice with IPS within 180 days of the incident, yet that notice was defective for failing to include the City as a defendant. The City asserts a plaintiff should not be allowed to "continue to file such notices over and over" in hopes of finally naming the right defendant. Appellant's Brief at 23. *Cf. Howard County Bd. of Comm'rs v. Lukowiak*, 810 N.E.2d 379, 384 (Ind.Ct. App.2004) ("We have found no provision within the [ITCA] which authorizes a claimant to file an amended notice. Were the amended notice filed within the required time period after the event causing the damages occurred, we perceive of no problem with allowing the amendments to be applicable to the claim.") (footnote omitted), *clarified on reh'g*, 813 N.E.2d 391, *trans. dismissed.* However, the record does not show a lack of diligence on Hicks's part in ascertaining the proper defendant; Hicks asserted at oral argument, and the City did not dispute, that counsel filed the City's tort claim notice immediately upon discovering that the City through its police department, and not IPS, operates the crossing guards who were allegedly negligent in causing the injury. Because the City has not shown, upon the record before the trial court at this stage of the case, that Hicks's claim on behalf of her daughter is barred under the ITCA, the trial court did not abuse its discretion by granting Hicks's motion to correct error.

### Conclusion

The City waived any challenge based on the magistrate's lack of authority to grant Hicks's motion to correct error by failing to object until after time for ruling on the motion expired. Waiver notwithstanding, the trial court properly used a nunc pro tunc order to grant Hicks's motion to correct error, as the CCS provides a sufficient

written memorial indicating the trial court adopted the magistrate's recommendation within the required time. On its merits, the trial court's ruling was not an abuse of discretion because the City failed to show that Hicks's tort claim on behalf of her daughter is barred by ITCA.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.